**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re Application Pursuant to 28 U.S.C. § 1782 | Misc. Case No. 16-2552 (BAH) |
| BSG RESOURCES LIMITED | Chief Judge Beryl A. Howell |
| Petitioner, | |
| v. | |
| CHARLES N. BROWER and MICHAEL DALY | |
| Respondents. | |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782 COMPELLING DISCOVERY IN AID OF A FOREIGN
JUDICIAL PROCEEDING**

Lindsay C. Harrison
(No. 977407)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, DC  20001
202-639-6000
lharrison@jenner.com

Lawrence S. Schaner*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
312-222-9350
lschaner@jenner.com

*Pro hac vice motion
pending

*Counsel for Respondents*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .......................................................................................................1

FACTUAL BACKGROUND ......................................................................................3

ARGUMENT ............................................................................................................11

I.   This Court Should Reject The Petition Because It Seeks Documents And Testimony That Are Immune From Discovery...................................................11

    A.   Section 1782 Does Not Authorize Courts To Grant Petitions Seeking Information Immune From Discovery. ..................................................12

    B.   The Information Sought By Petitioner Is Immune From Discovery. ....................13

        1.   The D.C. Code Protects Respondents From The Discovery Sought In The Petition................................................................14

        2.   English Law Also Immunizes Respondents From Discovery. .................15

        3.   The LCIA Arbitration Rules Prohibit Granting Of The Petition Due To Arbitrator Confidentiality...................................................16

        4.   Petitioner's Argument That It Seeks Discovery Beyond The Scope Of These Privileges Lacks Merit. ...........................................18

            a.   The Applicable Privileges Apply To "Non-Deliberative" Communications And Conduct, Which Are In Any Event Inseparable From Tribunal Deliberations. .....................................18

            b.   The Tribunal Secretary's Communications Fall Within The Scope Of The Relevant Privileges. ...............................................21

II.   Even If This Court Could Grant The Petition, It Should Not Because The Discretionary Factors Collectively Weigh Against Petitioner..........................................23

    A.   The Discovery Is Not Being Sought From A Party In The Foreign Proceeding, But Any Relevant Documents May Be Sought There From The Co-Arbitrators. .......................................................23

    B.   The Nature And Character Of The Foreign Proceedings Weigh Against Granting The Petition...........................................................24

    C.   The English High Court Will Not Be Receptive To The Discovery Sought.........27

D.      The Petition Conceals An Attempt To Circumvent Foreign Proof-Gathering
        Restrictions. ........................................................................................................28

E.      The Petition Is Unduly Intrusive And Burdensome...............................................29

F.      Granting The Petition Risks A Cascade Of Negative Consequences. ...................29

CONCLUSION.............................................................................................................................32

# TABLE OF AUTHORITIES[*]

CASES

*Andover Healthcare, Inc. v. 3M Co.*, No. 14-mc-44 (SRN/JKK), 2014 WL 4978476 (D. Minn. Oct. 6, 2014).........................................................................................28

*\*In re Application of Caratube International Oil Co., LLP*, 730 F. Supp. 2d 101 (D.D.C. 2010) ...........................................................................................25, 26, 28

*In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77 (2d Cir. 1997)...........................................................................................24

*In re Application of Microsoft*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006)............................................29

*In re Application of Microsoft Corp.*, No. 06-10061-MLW, 2006 WL 1344091 (D. Mass. Apr. 17, 2006)............................................................................................28

*Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009) ...............................................................................................................25

*Bayer AG v. Betachem, Inc.*, 173 F.3d 188 (3d Cir. 1999) ............................................................24

*In re Bayer AG*, 146 F.3d 188 (3d Cir. 1998) .................................................................................31

*In re Brooks*, 383 F.3d 1036 (D.C. Cir. 2004) ...............................................................................22

*Cobell v. Norton*, 237 F. Supp. 2d 71 (D.D.C. 2003) ....................................................................22

*Comcast Cable Communications, LLC v. Hourani*, No. 15-cv-1724 (RMC), __ F. Supp. 3d __, 2016 WL 2992053 (D.D.C. May 23, 2016)......................................................13

*Doe v. Cabrera*, 134 F. Supp. 3d 439, 456 (D.D.C. 2015)............................................................22

*In re Fischer Advanced Composite Components*, No. C-08-1512-RSM, 2008 WL 5210839 (W.D. Wash. Dec. 11, 2008).......................................................................24

*Gramling v. Food Machinery & Chemical Corp.*, 151 F. Supp. 853 (W.D.S.C. 1957) ...............................................................................................................15

*HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211 (D.D.C. 2015)...........................................................25

*\*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ..........2, 12, 13, 23, 24, 28, 29

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

*In re Kaiser Group International, Inc.*, 730 F. Supp. 2d 247 (D.D.C. 2010), *aff'd sub nom. Kasier Group International, Inc. v. World Bank*, 420 F. App'x 2 (D.C. Cir. 2011) ................................................................................................ 12-13

*In re King.com Ltd.*, No. 16-mc-80070-JCS, 2016 WL 4364286 (N.D. Cal. Aug. 16, 2016) ...........................................................................................................28

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) ...............................................................................................................30

*In re National Risk Underwriters, Inc.*, 484 F.3d 1389, 1989 WL 100649 (4th Cir. 1989) (unpublished table decision) ...............................................................14

*Norex Petroleum Ltd. v. Chubb Insurance Co. of Canada*, 384 F. Supp. 2d 45 (D.D.C. 2005) ...........................................................................................................28

*In re Application of OOO Promnefstroy*, No. M 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ............................................................................28

*Republic of Kazakhstan v. Biedermann International*, 168 F.3d 880 (5th Cir. 1999) ...............................................................................................................25

*\*Statoil v. Sonatrach* [2014] EWHC 875 (Comm).................................................16, 22

*Tae Hyung Lim v. American Economy Insurance Co.*, No. 13-cv-02603, 2014 WL 1464400 (D. Colo. Apr. 14, 2014) ...............................................................14

*Turner v. Murphy Oil USA, Inc.*, No. 05-CV-4206 (EEF), 2008 WL 2178087 (E.D. La. May, 21 2008)....................................................................................22

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) .................................30

*\*In re Veiga*, 746 F. Supp. 2d 8 (D.D.C. 2010) ...................................................1, 12

**STATUTES**

9 U.S.C. § 2..................................................................................................................30

28 U.S.C. § 1782.......................................................................................................1, 12

Colo. Rev. Stat. § 13-22-214(4)(a) .............................................................................14

*\*D.C. Code § 16-4414 ...................................................................1, 14, 16, 18, 21

**OTHER AUTHORITIES**

*\*Arbitration Act, 1996, c. 23, § 29 (Eng.) ...........................................................16, 22

Gordon Blanke, *EU competition arbitration in England and Wales: some notes on practice and procedure*, Global Competition Litigation Review (2012) ...............................15

Cal. Evid. Code § 703.5 ...............................................................................................14

*LCIA 1998 Rules of Arbitration, art. 30.2............................................................ 16-17

N.J.R. Super. Ct. R. 4:21A-4 ......................................................................................14

N.Y. Ct. R. § 28.12 ......................................................................................................14

Revised Uniform Arbitration Act § 14(d)....................................................................14

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 COMPELLING DISCOVERY IN AID OF A FOREIGN JUDICIAL PROCEEDING**

Respondents the Honorable Charles N. Brower ("Judge Brower") and Michael Daly ("Mr. Daly" or "Tribunal Secretary") respectfully submit the following Memorandum In Opposition To BSG Resources Limited's Petition For An Order Pursuant To 28 U.S.C. § 1782 Compelling Discovery In Aid Of A Foreign Judicial Proceeding (ECF No. 7) (hereinafter "Petition").

## INTRODUCTION

Petitioner BSG Resources Limited ("BSGR") seeks a court order compelling discovery of an arbitrator's confidential communications made during a London Court of International Arbitration ("LCIA") arbitration ("the Arbitration" or "the LCIA Arbitration").  By D.C. law, this information is immune from discovery:  "[A]n arbitrator is not competent to testify, and may not be required to produce records as to any statement, conduct, decision, or ruling occurring during the arbitration proceeding, to the same extent as a judge of a court of the District of Columbia acting in a judicial capacity."  D.C. Code § 16-4414.  This language precludes *all* testimony and applies to *any* statement and *all* conduct, including that of an arbitral tribunal secretary—the functional equivalent of a U.S. law clerk.  28 U.S.C. § 1782 therefore does not authorize what Petitioner seeks.  As Judge Kollar-Kotelly has explained, "Even if discovery is permissible under § 1782(a), Applicants may not seek information that is immune from discovery."  *In re Veiga*, 746 F. Supp. 2d 8, 26 (D.D.C. 2010).  Indeed, no U.S. district court, to counsel's knowledge, has ever granted a § 1782 petition seeking discovery from an arbitrator about any aspect of the arbitration.

Furthermore, even if the Court would have authority to do so, it should not grant the Petition.  Even where § 1782 authorizes discovery and all of the mandatory prerequisites are satisfied, it does not require discovery:  The Court may only grant discovery after considering a

variety of discretionary factors discussed in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  Those factors counsel strongly against granting BSGR's Petition.

The foreign proceedings for which discovery is sought are BSGR's attempt to gain a second bite at the apple:  After the LCIA rejected BSGR's challenge to the arbitrators appointed to decide a case in which it was a party based on their use of the Tribunal Secretary, BSGR filed an action in the English High Court in an attempt to re-litigate its failed challenge.  But the LCIA Division denied the underlying challenge for good reason: ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████  Moreover, the nature and character of BSGR's petition to the English High Court is fundamentally anti-arbitration and therefore contrary to the public policy of the United States and England.  Granting the present Petition would invite every aggrieved party to an arbitration to challenge the members, emboldened by their ability to seek discovery directly from arbitrators in a U.S. district court.

In addition, BSGR has not demonstrated that the English High Court would be receptive to the discovery it seeks here.  It would not.  Like D.C. law, English law protects arbitrators and their employees and agents with immunity.  We will know more definitively the English High Court's view once it rules on the ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



Other factors strongly counsel against granting the Petition as well.  It is undoubtedly an attempt to circumvent foreign proof-gathering restrictions and other policies.

Under similar circumstances, courts prioritize considerations of comity and deference to the foreign proceeding.

Finally, requiring Respondents to testify and produce documents would be deeply intrusive and burdensome.  Quite apart from the considerable burden of expense and time imposed upon the Respondents, the precedent set would undermine the international arbitration system and conflict with stated U.S. and English public policy.  Given the overwhelming factors weighing against the Petition, Respondents respectfully request that it be denied.

## FACTUAL BACKGROUND

Petitioner is an exploration and mining company.  In 2010, BSGR and Intervenor Vale S.A. ("Vale"), also a mining company, entered into agreements related to a joint venture to develop a mining concession in the Republic of Guinea.  Petr's Mem. In Support Of Pet. For An Order Pursuant To 28 U.S.C. § 1782 Compelling Discovery In Aid Of A Foreign Judicial Proc. at 2-3 (ECF No. 7-1) (hereinafter "Petr's Mem.").  Approximately four years later, in 2014, Guinea revoked the mining concession following a government review that concluded BSGR had obtained mining permits from Guinea's former president, Lansana Conté, through corruption.  *See* Tom

3

Jones, *Challenge Fails and Witnesses Arrested in Guinea Bribery Case*, Global Arbitration Review, Jan. 5, 2017, at 1, attached hereto as Exhibit A.  Legal proceedings ensued.  Vale commenced an arbitration against BSGR under the auspices of the LCIA, pursuant to provisions in its agreements with BSGR.  Petr's Mem. at 3.  ███████████████████████

████████████████████████████████████████████████████

The LCIA is one of the world's foremost arbitral institutions.  It administers cases not only in London, but worldwide.  Pursuant to the 1998 LCIA Arbitration Rules ("the LCIA Rules"), the LCIA formed a tribunal ("the Tribunal") to adjudicate the dispute between BSGR and Vale, consisting of Judge Brower, as chairman, and Sir David Williams QC of New Zealand, and Mr. Michael Hwang SC of Singapore, as co-arbitrators.  *Id.* at 3.

Judge Brower is a Judge *ad hoc* of the International Court of Justice (the "World Court") and a Judge of the Iran-United States Claims Tribunal (where he has served since 1983), both located in The Hague, the Netherlands.  He previously served in the White House as Deputy Special Counsellor to President Reagan and as the Acting Legal Adviser for the U.S. Department of State, where he was the chief lawyer of the Department and principal international lawyer for the United States Government.  Judge Brower has served as Judge *Ad Hoc* of the Inter-American Court of Human Rights, as a member of the Register of Experts of the United Nations Compensation Commission in Geneva ("UNCC"), and as a member of the Panels of Conciliators and Arbitrators of ICSID.  As a partner of White & Case LLP in Washington, DC for many years, he represented various governments in proceedings before the World Court.  He is a member of the panels of arbitrators of a number of arbitral institutions around the world.  As counsel or arbitrator, he has handled cases on six continents.  He was listed by The American Lawyer as No. 1 of its "Top Ten Arbitrators," having appeared in the Top Ten list in every one of the publication's

biennial surveys since they began in 2005.  Judge Brower has served as President of the American Society of International Law, Governor of the American Bar Association, Chair of the Institute for Transnational Arbitration, and on the Executive Council of the International Law Association.  He has published and spoken around the world on international law and dispute resolution and received numerous honors in connection with his work and leadership in those fields.

Sir David Williams and Mr. Michael Hwang are leading international arbitrators.  Among other honors, Sir David Williams was recently knighted in recognition of his services to international law.  *See New Zealand Arbitrator Knighted In New Year's Honours List*, Jan. 3, 2017, Global Arbitration Review, at 1, attached hereto as Exhibit B.  Mr. Hwang currently serves as Singapore's Non-Resident Ambassador to Argentina, and as the Chief Justice of the Dubai International Centre Courts.  *See* Press Release, Singapore Ministry of Foreign Affairs (Sept. 23, 2015), at 1, attached hereto as Exhibit C.



---

[1] On August 14, 2014, the exchange rate of British Pounds to U.S. Dollars was 1:1.6685.  Thus the Tribunal was proposing that Mr. Daly be compensated at a rate of approximately $167 dollars per hour.  *See* http://www.exchange-rates.org/Rate/GBP/USD/8-14-2014.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████   In February 2016, the Tribunal

issued its "Second Decision on Document Production," which BSGR perceived as unfair.  *See*

Statement of Karel Norbert Daele ¶ 24 (ECF No. 7-13) (hereinafter "Daele Decl.").  According to

BSGR, that decision went "to the very heart of [the] dispute" between BSGR and Vale, and

indicated that the Tribunal was inclined to rule against BSGR on a key merits issue.  *Id.*

Shortly after that decision, BSGR initiated what became a concerted effort to disqualify

the members of the Tribunal.  BSGR focused on a misdirected e-mail its counsel received from

Judge Brower, intended for Mr. Daly.  Judge Brower had received an e-mail from BSGR's

solicitors attaching a letter that explained, among other things, the steps BSGR was taking to

comply with the Tribunal's document-production rulings.  Judge Brower intended to forward the

e-mail to Mr. Daly, stating, "Dear Michael, your reaction to this latest from BSGR?"   Judge

Brower erroneously sent the e-mail to a paralegal employed by BSGR's solicitors.  *See* Decl. Of

James L. Libson In Support Of Pet. For An Order Pursuant To 28 U.S.C. § 1782 Compelling

Discovery In Aid Of Foreign Judicial Proc. ¶ 12 (ECF No. 7-11) (hereinafter "Libson Decl.");

Letter From Mishcon De Reya To Tribunal, Mar. 29, 2016, attached hereto as Exhibit F.

████████████████████████████████████████████████████████

████████████████████████████   *See* Ex. F at 1-2.   ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████,



On May 5, 2016, BSGR brought a challenge under the LCIA Arbitration Rules, seeking removal of all three Tribunal members under the LCIA's procedure for adjudicating challenges before a special panel, or "Division," constituted by the LCIA.  Libson Decl. ¶ 15.[2]  BSGR raised five challenges to the Tribunal members before the LCIA Division.  *Id.* ¶ 15.1-15.5.  Three of these challenges related to Mr. Daly's role, including that "the Tribunal improperly delegated its role to Respondent Daly," *id.* ¶ 15.1, that Judge Brower "breached his mandate as an arbitrator and his duty not to delegate by seeking the views" of Mr. Daly, *id.* ¶ 15.2, and that the co-arbitrators "breached their mandate as arbitrators and their duty not to delegate by not sufficiently participating in the arbitration proceedings and the decision-making process," *id.* ¶ 15.3.

---

[2] Separate from the disqualification effort underlying this dispute, in late 2016, BSGR moved to disqualify the ICSID tribunal adjudicating its dispute with Guinea after that tribunal ruled against it on discovery.  The President of the World Bank and Chairman of ICSID's Administrative Council recently rejected that challenge.  *See* Ex. A at 1.



███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████

Dissatisfied with the results of its LCIA challenge, BSGR on October 7, 2016 filed suit in the United Kingdom, in the High Court of Justice, Queen's Bench Division, Commercial Court (the "English High Court"), against Vale and each of the three current arbitrators.[3]  English High Court Claim at 1 (ECF No. 7-12).  In that proceeding, BSGR renewed one of the challenges the LCIA Division previously rejected: that Mr. Hwang and Sir David Williams improperly delegated their duties as arbitrators to Mr. Daly.  *Id.* at 3; Libson Decl. ¶ 20; Daele Decl. ¶ 10.  According to BSGR, the improper delegation occurred in connection with three decisions:  First, the Tribunal's June 28, 2015 decision permitting participants in the LCIA Arbitration and the ICSID arbitration to share records, Daele Decl. ¶ 22.1; second, the Tribunal's July 24, 2015 decision refusing BSGR's application to stay the LCIA Arbitration in favor of the ICSID arbitration, *id.* ¶ 23.1; and third, the February 16, 2016 Second Decision on Document Production, *id.* ¶ 24.1.  ██████████

███████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

---

█ ███████████████████████████████████████████████
██████████



One month later, on December 21, 2016, BSGR filed the Petition.

## ARGUMENT

**I.     This Court Should Reject The Petition Because It Seeks Documents And Testimony That Are Immune From Discovery.**

Section 1782 permits a court to order a person residing or found in its district to produce

documents or testimony related to a foreign proceeding, but only if the petition for discovery meets

11

certain requirements.[4]  In particular, a court may not grant a petition under § 1782 that "seek[s] information that is immune from discovery." *In re Veiga*, 746 F. Supp. 2d 8, 26 (D.D.C. 2010).

Section 1782 does not authorize the instant Petition because it seeks information that is immune from discovery:  an arbitral tribunal's internal communications and records.  Every possibly relevant source of law is unequivocal that arbitrators are immune from discovery related to their work.  This rule is only logical.  If disgruntled parties to an arbitration could pry into the inner workings of the arbitrators, the speed, finality, and confidentiality that make arbitration attractive would be lost.  Under D.C. law, English law, and the arbitration rules of the LCIA, the deliberations of an arbitral tribunal are confidential and immune from disclosure.

### A.  Section 1782 Does Not Authorize Courts To Grant Petitions Seeking Information Immune From Discovery.

28 U.S.C. § 1782 authorizes federal courts to assist in the production of evidence for use in a proceeding in a foreign or international tribunal.  *See generally Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  In general, the statute speaks in discretionary terms:  A federal district court "may order" a person residing or found in the district to give testimony or produce documents for use in the foreign proceeding.  However, the statute leaves no discretion with respect to information immune from discovery; it provides that "[a] person *may not* be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  28 U.S.C. § 1782(a) (emphasis added).

This limitation applies not only to information protected by classic privileges such as the attorney-client privilege, but also where information is otherwise immune from discovery.  *See, e.g., In re Kaiser Grp. Int'l, Inc.*, 730 F. Supp. 2d 247, 251 (D.D.C. 2010) (refusing to grant § 1782

---

[4] Respondents do not contest that they were found within the district; that the English High Court proceeding is a foreign legal proceeding; and that Petitioner is interested.  *See* Petr's Mem. at 10.

discovery because the International Bank for Reconstruction and Development had not waived its immunity from suit), *aff'd sub nom. Kaiser Grp. Int'l, Inc. v. World Bank*, 420 F. App'x 2 (D.C. Cir. 2011); *Comcast Cable Communications, LLC v. Hourani*, No. 15-cv-1724 (RMC), __F. Supp. 3d__, 2016 WL 2992053, at *4 (D.D.C. May 23, 2016) ("Section § 1782 is . . . limited by the cable privacy provision of the Communications Act"); *cf. Intel*, 542 U.S. at 266 (stating that Intel's business secrets and other confidential information would be protected by "§ 1782(a)'s preservation of legally applicable privileges, and the controls on discovery available to the District Court").  In short, where a petition seeks information that is protected from discovery under the law, the court does not have authority under § 1782 to grant the petition.

### B.  The Information Sought By Petitioner Is Immune From Discovery.

Every relevant legal authority confirms that information about the inner workings of an arbitral tribunal is strictly confidential and protected from discovery.  Yet the disclosure of legally protected communications is precisely what Petitioner seeks.  BSGR's stated aim is to interrogate Judge Brower and Mr. Daly about the most sensitive inner workings of the Tribunal, about how the arbitrators reached specific discovery and other procedural decisions, and how the members of the Tribunal drafted those decisions. Petr's Mem. at 6.  BSGR also seeks to make similar requests for documents from Respondents, including "all documents, including notes, voicemails, text messages and the like relating to the Instruction Emails and Response Emails." *Id.*  Collectively, these requests reveal that BSGR has ignored the Tribunal's repeated assurances that the arbitrators alone have made the decisions reflected in all of the Tribunal's rulings to date, and instead BSGR is trying to learn as much as it can about the Tribunal's deliberations.

**1.   The D.C. Code Protects Respondents From The Discovery Sought In The Petition.**

The law of the District of Columbia explicitly provides that arbitrators cannot be made to testify about their work on an arbitration.  Section 16-4414(d) of the D.C. Code states that "[i]n a judicial, administrative, or similar proceeding, an arbitrator is not competent to testify, and may not be required to produce records as to any statement, conduct, decision, or ruling occurring during the arbitration proceeding, to the same extent as a judge of a court of the District of Columbia acting in a judicial capacity."  This language is broad and unlimited:  It applies to "any statement" and all "conduct," not just conduct bearing on deliberations.  It states that the arbitrator "is not competent to testify" at all.

The D.C. statute mirrors the provision in the Revised Uniform Arbitration Act immunizing arbitrators from requests such as are made by the Petition.  *See* Revised Uniform Arbitration Act § 14(d).  Numerous states have substantially identical statutes, including California, Cal. Evid. Code § 703.5; New York, N.Y. Ct. R. § 28.12; New Jersey, N.J.R. Super. Ct. R. 4:21A-4; and Colorado, Colo. Rev. Stat. § 13-22-214(4)(a).  Federal courts have relied on these statutes in rejecting attempts to subject arbitrators to depositions or document discovery.  *See In re Nat'l Risk Underwriters, Inc.*, 484 F.3d 1389, 1989 WL 100649, at *3-4 (4th Cir. 1989) (unpublished table decision); *Tae Hyung Lim v. Am. Econ. Ins. Co.*, No. 13-cv-02603, 2014 WL 1464400, at *4 (D. Colo. April 14, 2014).  As well-known arbitrator Gary Born, who has submitted an expert declaration on behalf of Respondents, explains, "arbitrators perform adjudicative functions, much like national court judges.  As a consequence, like judges, arbitrators and arbitral institutions have also long enjoyed quasi-judicial immunities" and must therefore be shielded from having to testify or disclose evidence in relation to their adjudicative functions.  *See* Expert Decl. Of Gary B. Born, ¶ 23, attached hereto as Exhibit Q.

This rule has been widely adopted for good reason.  Allowing a participant in an arbitration to hale an arbitrator into a deposition room would defeat the purpose of arbitration.  Arbitration would be unending, rather than expeditious, and arbitrators would be unable to have frank and free discussions with their colleagues.  *See Gramling v. Food Mach. & Chem. Corp*., 151 F. Supp. 853, 860-61 (W.D.S.C. 1957) ("The same considerations of public policy [protecting juror deliberations] are equally applicable to the impeachment of an arbitrator's award; for arbitrators, like jurors must have 'private, frank and free' discussions of the issues involved").  For these reasons, courts have warned against a "disappointed party" embarking on a "fishing expedition," in hopes of obtaining a do-over of a disappointing result.  *Id.*  This principle is especially true in international arbitration, where the arbitrators' views are often exchanged by e-mail due to wide geographic disparities; as Ms. Miles explained in her Witness Statement before the English High Court, "the arbitral process would be severely undermined if practicing arbitrators believed that their private correspondence could be susceptible to being disclosed to a party by way of an application under [English law]."  Ex. N ¶ 54.

### 2.   English Law Also Immunizes Respondents From Discovery.

English law also strongly disfavors discovery directed at an arbitral tribunal and provides an independent basis for immunity.  England, like the United States, has a strong policy favoring arbitration, and as Mr. Born notes, England has recognized the quasi-judicial role served by arbitrators.  *See* Ex. Q ¶ 34-37.   As a result, England too provides arbitrators and their employees and agents with a strong immunity guarantee that applies "mutatis mutandis to an employee or agent of the arbitrator, including, no doubt, his administrative secretary."  *See* Gordon Blanke, *EU Competition Arbitration in England and Wales: Some Notes on Practice and Procedure*, Global Competition Litigation Review 91 (2012).  Specifically, Section 29 states:

(1) An arbitrator is not liable for anything done or omitted in the discharge or purported discharge of his functions as arbitrator unless the act or omission is shown to have been in bad faith.

(2) Subsection (1) applies to an employee or agent of an arbitrator as it applies to the arbitrator himself.

Arbitration Act, 1996, c. 23,  § 29(2) (Eng.).

Furthermore, because of England's respect for arbitral immunity and confidentiality, English courts have held that arbitrators and their secretaries are correct to deny requests by arbitrating parties to obtain discovery into their records.  *See, e.g., Statoil v. Sonatrach* [2014] EWHC 875 (Comm), attached hereto as Exhibit R.   Remarkably on point, the *Statoil* case presented a challenge to an arbitral tribunal alleging that "the tribunal improperly delegated authority to its administrative secretary or impermissibly allowed her to participate in its deliberations." *Id.* ¶ 46.  The English High Court rejected the challenging party's request that the notes prepared by the tribunal secretary be produced, explaining that when "the tribunal declined to produce them, on the basis that to do so would violate the secrecy of the tribunal's deliberations, . . . that should have been an end of the matter." *Id.* ¶¶ 48-49.

So too here.  As provided in D.C. § 16-4414(b), the immunity afforded by D.C. law "supplements any immunity under other law."  Thus even if BSGR could poke holes in the D.C. immunity statute (and it cannot), Respondents are independently immune from the discovery requests under English law.

### 3.  The LCIA Arbitration Rules Prohibit Granting Of The Petition Due To Arbitrator Confidentiality.

The arbitration that underlies this action is governed by the LCIA Rules pursuant to the parties' express contractual undertaking.  Those Rules prohibit the discovery sought in the Petition because the Petition would force a breach of arbitrator confidentiality.  Article 30.2 of the LCIA

Rules states that "[t]he deliberations of the Arbitral Tribunal are . . . confidential to its members." The parties themselves, in agreeing to arbitrate under the LCIA Rules, agreed to abide by and respect the rules and obligations contained therein, including Article 30.2. Those Rules unambiguously establish that the Tribunal's deliberations are confidential. Indeed, both the Tribunal as well as the LCIA Division ruled so expressly in declining Petitioner's first three requests for the discovery it seeks again in this Court. *See supra* at pp. 7-9.

Gary Born confirms that these confidentiality obligations are strictly observed, noting that "the confidentiality of the arbitral deliberations is central to the adjudicative character and integrity of the arbitral process. In the words of one author, the rule that arbitral deliberations remain secret is 'a fundamental principle which constitutes one of the mainsprings of arbitration, as it does of all judicial decisions.'" Ex. Q ¶ 39. Accordingly, "it is axiomatic that neither an arbitrator nor a tribunal secretary should be compelled to disclose any communication between them concerning the arbitration to one of the parties to an arbitration, or to any third party whatsoever. To do so would be to undercut decades, and even centuries, of laws, rules, and policies established to protect the sanctity of tribunal deliberations." *Id.* ¶ 45. ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████

Accordingly, to permit discovery of Respondents would not only conflict with established legal principles in D.C. and England, but would require that Respondents violate their confidentiality obligations to the Tribunal, to the LCIA, and to both Vale and BSGR itself. Petitioner agreed to respect those obligations when it agreed to arbitrate under the LCIA

Arbitration Rules and cannot now renege on that agreement by seeking information exempt from discovery in accordance with those Rules.

### 4. Petitioner's Argument That It Seeks Discovery Beyond The Scope Of These Privileges Lacks Merit.

#### a. The Applicable Privileges Apply To "Non-Deliberative" Communications And Conduct, Which Are In Any Event Inseparable From Tribunal Deliberations.

Petitioner attempts to evade the foregoing legal privileges afforded to arbitrator communications by arguing that its Petition merely seeks to understand the Secretary's role, not to reveal the Tribunal's deliberations. Even so targeted, this does not evade the reach of the relevant legal privileges, and in any event, the sought-after communications and information are indivisible from the Tribunal's deliberations.

First, D.C. Code § 16-4414 applies irrespective of whether the discovery request seeks "non-deliberative" communications. That law renders immune from discovery "records as to any statement" and any "conduct" occurring during the arbitration, a broad sweep which includes all communications with an arbitral secretary and all conduct, including the arbitrators' interactions with the Secretary. D.C.'s explicit rule, by itself, should dispose of this Petition.

Second, even if the statute only protected certain "deliberative" communications, it would protect the information BSGR seeks for production. Despite what BSGR argues, the information BSGR seeks is inseparable from and would reveal much about the Tribunal's deliberations. ■



To pry open the Tribunal's inner workings and determine "who produced the first draft of the Decision and how long was it," or "who responded [to a draft] and how quickly," Libson Decl. ¶ 35—information BSGR claims it should receive—would profoundly intrude on the confidentiality of the Tribunal's decision-making process.   All manner of communications with the Tribunal Secretary would reveal what each Tribunal member was thinking at a given time:   If an arbitrator asked the Tribunal Secretary for a particular document, it would reveal to the parties that arbitrator's focus on that document and its contents; if an arbitrator asked the Tribunal Secretary for a specific legal precedent, it would reveal the arbitrator's thinking about the relevant legal issues; if an arbitrator asked the Tribunal Secretary to prepare a chronology of facts with instructions about which events to include, it would reveal the arbitrator's thinking about which events are material to the case.   Thus, even those communications with the Tribunal Secretary deemed by BSGR to be innocuous would in fact reveal aspects of the arbitrators' thinking, their priorities, their decision-making method, and their thoughts about the merits.



Ex. N ¶ 52.

The "misdirected email" discussed by BSGR further illustrates this point.   BSGR

questioned why Judge Brower might have forwarded to Mr. Daly a letter from BSGR explaining

its compliance with the Tribunal's discovery rulings, along with a request for his "reaction to this

latest from BSGR."   *See supra* at p. 6.   Presumably, if this email had been sent to Mr. Daly, it

would be subject to the subpoena Petitioner seeks.   But this would provide an incomplete and

distorted view of the Tribunal's actual deliberations.   ███████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████   Unless one reviewed

any ensuing back-and-forth *and* the actual deliberations between the three arbitrators regarding

BSGR's discovery compliance, one could not say anything at all about whether Mr. Daly in fact

participated in those deliberations.

This is why arbitrator confidentiality restrictions, including those in the D.C. Code, sweep

so broadly: They recognize that it is impossible to parse a tribunal's communications without

divulging its deliberations.   █████████████████████████████████████████████



████████   BSGR's attempt to parse "deliberative" communications from other internal Tribunal

communications is thus futile, even if it were relevant under D.C. law.

### b. The Tribunal Secretary's Communications Fall Within The Scope Of The Relevant Privileges.

BSGR argues that the statutes, rules, and case law protecting arbitrators do not apply here because Mr. Daly was not an arbitrator.  *See* Petr's Ext. Opp. ¶ 5.  That argument ignores the fact that the Tribunal Secretary functions as the agent and an extension of the three arbitrators, in much the same way that a law clerk functions as an extension of a judge.  *See* Ex. S at 6.  Indeed, the same D.C. statute providing immunity to arbitrators expressly extends the identical immunity to arbitrators as to judges.  See D.C. Code § 16-4414(a) ("An arbitrator is immune from civil liability to the same extent as a judge of a court of the District of Columbia acting in a judicial capacity.").  Permitting discovery of Mr. Daly's communications with the members of the Tribunal would therefore defeat the purpose of the protections the law gives to arbitrators.

The expert declaration of Gary Born elaborates on the role of the Tribunal Secretary as akin to a judge's law clerk.  *See* Ex. Q ¶¶ 10-22.  As he explains, a tribunal secretary "is tasked with overseeing the day-to-day developments of a particular arbitration—and doing so from the learned perspective of a trained lawyer."  *Id.* ¶ 12.  A tribunal secretary "often fulfills a role very similar to that of a law clerk for a judge," *id.* ¶ 16, including not just organizing filings but also conducting legal research and sometimes drafting portions of orders or awards, *id*.  For these reasons, Mr. Born states, "it should be self-evident that any communication between a member of an arbitral tribunal and a tribunal secretary concerning any aspect of the arbitration falls within the definition of tribunal 'deliberations.' . . .  In practice, presiding arbitrators often must and will initiate the deliberative process—with appropriate assistance, as needed, from the tribunal secretary—by fostering discussion, preparing memoranda, circulating points for debate, and drafting a decision for review."  *Id.* ¶ 19.  In Mr. Born's words, "The tribunal secretary is part and parcel of that deliberative process, though not in any sense having any 'deciding' role whatsoever.

21

. . . It is precisely because the tribunal secretary has been trained in the laws and procedures of arbitration (unlike administrative support personnel) that he or she is privy to the deliberative process and adds knowledgeable support to the tribunal during that process." *Id.* ¶ 20.[5]

Both English and U.S. law recognize and account for this reality of the deliberative process. As noted above, the English Arbitration Act specifically states that its immunity protections for arbitrators "appl[y] to an employee or agent of an arbitrator as [they] apply to the arbitrator himself." Arbitration Act, 1996, c. 23 § 29(2) (Eng.). And in *Statoil*, the High Court explained that "it is standard practice in ICC arbitrations for administrative secretaries to be used and for them to produce notes to assist the tribunal," Ex. R ¶ 48, and the High Court approved the tribunal's refusal to provide those notes to the parties, *id.* ¶¶ 48-49, and concluded that the challenge was "completely without merit and . . . never should have been made," *id.* ¶ 46.

Likewise, this Court, and other courts, have consistently granted the same protections from discovery to law clerks as to judges. *See Doe v. Cabrera*, 134 F. Supp. 3d 439, 456 (D.D.C. 2015); *Cobell v. Norton*, 237 F. Supp. 2d 71, 101-02 (D.D.C. 2003); *Turner v. Murphy Oil USA, Inc.*, No. 05-CV-4206 (EEF), 2008 WL 2178087, at *1 (E.D. La. May, 21 2008); *cf. In re Brooks*, 383 F.3d 1036, 1043-44 (D.C. Cir. 2004) (denying mandamus petition seeking "the rather extraordinary relief" of "discovery of the private communications between a district judge and subordinate judicial officers regarding matters the judge has expressly stated are procedural and non-

---

[5] BSGR may argue that the LCIA Division's "Notes to Arbitrators" caution against the Tribunal Secretary's participation in deliberations. But as the LCIA Division noted, the LCIA did not issue its Notes for Arbitrators until mid-way through the Arbitration, well after Mr. Daly was appointed Tribunal Secretary. *See* Ex. L ¶ 249. The LCIA Division further observed that the list of activities set forth in paragraph 71 of the Notes for Arbitrators is qualified by the phrase "such matters as," making it clear that it only highlights "broad principles"; it is not a "complete" or "exhaustive" list; and in any event, "it would be wrong to confine consideration of the tasks undertaken by Mr. Daly solely to the LCIA Notes." *See id.* ¶¶ 255, 260; *see also* Born Decl., Ex. Q ¶¶ 21-22.

substantive").   These decisions recognize the dramatic consequences if parties could take discovery from a judge's law clerk; such an outcome is intolerable in a system dependent on the confidentiality of a judge's chambers.  So, too, with arbitrators and tribunal secretaries.

Accordingly, this Court lacks authority under § 1782 to grant the Petition.

## II.     Even If This Court Could Grant The Petition, It Should Not Because The Discretionary Factors Collectively Weigh Against Petitioner.

Because the Petitioner's requested relief would conflict with established law, the Court need not weigh whether granting the Petition is an appropriate exercise of its discretion.  But even if the Court's discretion could be invoked, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."  *Intel*, 542 U.S. at 264.  A court weighing a § 1782 petition must assess, *inter alia*:  "the person from whom discovery is sought"; "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign [court] to U.S. federal-court judicial assistance"; whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and whether the request is "unduly intrusive or burdensome."  *Id.* at 264-65.  These factors are not exhaustive, and the Court may weigh other factors as well.  As explained below, the relevant discretionary factors weigh decisively against granting the Petition.

### A.  The Discovery Is Not Being Sought From A Party In The Foreign Proceeding, But Any Relevant Documents May Be Sought There From The Co-Arbitrators.

Neither Judge Brower nor Mr. Daly is a party to the English High Court proceeding.  While this might ordinarily favor granting a § 1782 petition, in this case it does not because Judge Brower's erstwhile co-arbitrators, Mr. Hwang and Sir David Williams, *are* participants there.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████ *See Intel*, 542 U.S.

at 264 (first factor relates to whether "evidence[] available in the United States may be

unobtainable absent § 1782(a) aid").

Indeed, redundancy is itself a basis for denying a § 1782 petition.  *See Bayer AG v.*

*Betachem, Inc.*, 173 F.3d 188 (3d Cir. 1999) (unreasonably cumulative); *In re Application for an*

*Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77 (2d Cir. 1997) (stating

that 1782 discovery may be denied as duplicative or vexatious); *In re Fischer Advanced Composite*

*Components*, No. C-08-1512-RSM, 2008 WL 5210839, at *4 (W.D. Wash. Dec. 11, 2008)

(rejecting § 1782 petition that would have required nonparty to "to produce the very same emails

that [party to foreign litigation] will have to produce").

BSGR suggests that there are communications between Judge Brower and Mr. Daly on

which neither of Mr. Hwang and Sir David Williams was copied, but that is beside the point.  Judge

Brower is no longer presiding over the dispute between BSGR and Vale and thus is not the subject

of the pending English High Court proceeding.   That proceeding is an effort to challenge Mr.

Hwang and Sir David Williams alone.  ███████████████████████████

████████████████████████████████████████████████████████

█████████████████████ This factor thus favors Respondents.

### B.  The Nature And Character Of The Foreign Proceedings Weigh Against Granting The Petition.

The nature and character of the foreign proceedings weigh against granting the Petition.

After losing its challenge to two of the arbitrators in the LCIA Division, BSGR instituted the

English High Court proceedings in an effort to re-litigate that challenge.  Petitioner is seeking to

dismantle an arbitration that Petitioner itself consented to use as its exclusive dispute resolution mechanism in its agreement with Vale. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ As discussed above, the LCIA Arbitration Rules protect arbitrator communications from disclosure to the parties and broadly mandate confidentiality. Indeed, the LCIA Division denied Petitioner's request for the very information sought here, recognizing that the LCIA Arbitration Rules do not authorize such discovery.  Under similar circumstances, courts have found that this factor weighs against granting a § 1782 petition.  *See, e.g.*, *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 223 (D.D.C. 2015) ("The nature of the foreign tribunal weighs against enforcing discovery if the party seeking the discovery had options in selecting the forum for the foreign proceeding."); *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106 (D.D.C. 2010) (expressing reluctance "to interfere with the parties' bargained-for expectations concerning the arbitration process"); *Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) (rejecting § 1782 application where "sophisticated parties freely chose the French forum with all its requisite procedural rules"); *see also Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999) ("Resort to § 1782 in the teeth of [arbitration] agreements suggests a party's attempt to manipulate United States court processes for tactical advantage.").

The *Caratube* case is especially instructive.  There, the petitioner sought discovery in aid of its ICSID arbitration against the Republic of Kazakhstan.  It filed its § 1782 petition in response to document-production rulings from the arbitral tribunal.  730 F. Supp. 2d at 105.  In assessing the petition, Judge Bates noted that "Caratube chose to bring [its] dispute before an ICSID arbitration panel." *Id.* at 106.  He explained, "Parties to an arbitration are 'free to set the procedural

rules for arbitrators to follow.'   This Court is reluctant, then, to interfere with the parties'

bargained-for expectations concerning the arbitration process."   *Id.* (quoting *United Paperworkers*

*Int'l Union v. Misco, Inc.*, 484 U.S. 29, 39 (1987)); *see also id.* at 107 (quoting *Bull HN Info. Sys.*

*v. Hutson*, 229 F.3d 321, 329 (1st Cir. 2000) ("The purpose of arbitration in large part is to have

simplified, expedited proceedings and courts should be reluctant to adopt rules which interfere

with the accomplishment of those purposes.")).   Judge Bates' order thus denied the § 1782 petition,

recognizing and respecting the foreign arbitral process to which the parties had agreed.

 Were BSGR granted its petition seeking confidential communications of its arbitral

Tribunal, it would jeopardize arbitration in England and, potentially, worldwide.   *See* Born. Decl.,

Ex. Q ¶¶ 55-56.



Nor have

Respondents been able to locate any such cases.   This is because both U.S. and English law and

policy favor arbitration, and do not countenance attempts to thwart arbitration through

unprecedented discovery tactics.

---



**C.  The English High Court Will Not Be Receptive To The Discovery Sought.**

The Petition also runs counter to the *Intel* factor regarding the receptivity of the foreign court to the discovery sought.  The Court already knows how the LCIA Division dealt with Petitioner's two successive discovery requests: ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

*See supra* at p. 8.  Moreover, under analogous circumstances, the English High Court has denied similar requests for documents of a tribunal secretary.  *See supra* at pp. 6, 22 (discussing *Statoil*). Thus even if the English courts are generally receptive to U.S. discovery, they have shown definitively that they do not support intrusion into the records of arbitrators and their secretaries.

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███ substantive hearing for February 3, 2017, despite BSGR's request that it not occur until all disclosure in the U.K and U.S. was complete."  Petr's Ext. Opp. at 1.

This circumstance militates against BSGR's Petition.  *See In re Application of OOO Promnefstroy*, No. M 19-99 (RJS), 2009 WL 3335608, at \*9 (S.D.N.Y. Oct. 15, 2009) (rejecting petition where petitioner "ha[d] repeatedly made entreaties to various Dutch courts to get the same information it now seeks, and it ha[d] been rebuffed"); *Andover Healthcare, Inc. v. 3M Co.*, No. 14-mc-44 (SRN/JKK), 2014 WL 4978476, at \*5 (D. Minn. Oct. 6, 2014) (rejecting petition because "the German court has already indicated that it will grant [petitioner's] discovery request should it find that the discovery is necessary to resolve the case"); *In re King.com Ltd.*, No. 16-mc-80070-JCS, 2016 WL 4364286, at \*8 (N.D. Cal. Aug. 16, 2016) (rejecting petition where foreign court had rejected an attempt to obtain discovery).

### D. The Petition Conceals An Attempt To Circumvent Foreign Proof-Gathering Restrictions.

The Petition should also be denied because it "conceals an attempt to circumvent foreign-proof gathering restrictions."  *Intel*, 542 U.S. at 264-65.  The restrictions at issue are those discussed *supra* in Part I.B, which prohibit discovery of confidential arbitral communications. Courts are "wary of granting discovery under § 1782" where the petitioner is attempting to "'jump the gun' on discovery in the underlying foreign suit."  *Norex Petroleum Ltd. v. Chubb Ins. Co. of Can.*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005); *Caratube*, 730 F. Supp. 2d at 107.  Courts do not apply § 1782 to "undermine the law of [foreign states] concerning how a litigant may obtain third-party documents."  *In re Application of Microsoft Corp.*, No. 06-10061-MLW, 2006 WL 1344091, at \*4 (D. Mass. Apr. 17, 2006).  Granting the Petition here would do so.

BSGR suggests that this factor is not relevant because some U.S. courts have granted § 1782 petitions to assist proceedings in English Courts.  *See* Petr's Mem. at 13.  But none of those cases involved even remotely analogous circumstances. ██████████████

████████████████████████████████████████████



### E.  The Petition Is Unduly Intrusive And Burdensome.

The Petition should also be denied as "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65.  It seeks some of the most sensitive material a litigant has ever attempted to acquire under § 1782:  testimony and documents from an arbitrator and Tribunal Secretary about how and why the Tribunal reached the decisions they did.  Petitioner suggests that it has targeted its requests to avoid breaching the confidentiality of the Tribunal's deliberations, but that is impossible.  *See supra* at pp. 18-20.  Even if it were possible, collecting and parsing two years of communications to assess whether they meet Petitioner's nebulous standard for what "relate[s] to the role and work of the Secretary" in the arbitration would be costly and time-consuming.  Those burdens are especially great given that Respondents are private citizens who agreed to participate in the arbitration pursuant to LCIA Rules that the LCIA itself has found to prohibit the discovery being sought.  This factor therefore counsels strongly against granting the Petition.

### F.  Granting The Petition Risks A Cascade Of Negative Consequences.

A panoply of negative consequences counsel against granting the Petition.  First, permitting BSGR to take discovery from Respondents about their work on the Tribunal would cripple the Tribunal.  The Arbitration is still ongoing, has not held a hearing on the merits, and is thus far away from issuing any award.  Giving BSGR a window into the Tribunal's earlier deliberations

would grant it insight into how the Tribunal is approaching the still-unfinished Arbitration, which BSGR could use to hone its further legal strategy.   And going forward, the Tribunal would be operating in the knowledge that the confidentiality of its communications had been judicially breached and therefore could be breached again in the future.   Faced with similar breaches of confidentiality, U.S. courts typically reassign cases.   *See, e.g., United States v. Microsoft Corp*., 253 F.3d 34, 46 (D.C. Cir. 2001) (en banc; per curiam).

Second, permitting intrusive discovery into the workings of the Tribunal would undermine the system of international arbitration writ large.   International arbitration depends on confidentiality.   *See* Born Decl., Ex. Q, ¶ 39-45.   If either arbitrators or prospective parties thought that the details of deliberations might be dragged into the light of day, they would be less likely to participate in the arbitration system.   For arbitrators, "the vast majority" are private citizens who will be loath to serve in the future, knowing that they could be forced to defend themselves in costly and time-consuming litigation before U.S. courts at the whim of a disgruntled party.   *Id.* ¶ 57.   For parties, the core advantages of arbitration—speed and finality—are lost if dissatisfied participants could lodge § 1782 petitions in support of interlocutory challenges.   And to be sure, U.S. courts would see a dramatic increase in § 1782 petitions if tribunal communications could be unearthed in service of such challenges.

Third, permitting discovery here would contravene established U.S. public policy and raise foreign relations concerns.   Recognizing the value of arbitration—both domestic and international—Congress has explicitly established a public policy of the United States favoring arbitration.   *See* Federal Arbitration Act, 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).   Granting the Petition would conflict with that directive.   It would also conflict with Congress's purpose in enacting § 1782 itself, which was to help the United

States "engage[] itself fully in efforts to improve practices of international cooperation in litigation," and to "provid[e] equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects." *In re Bayer AG*, 146 F.3d 188, 191 (3d Cir. 1998) (quoting S. Rep. No. 88-1580, at 2 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 3783)).

As Mr. Born explains, BSGR's Petition therefore would frustrate rather than accomplish the purposes of § 1782:

> The essence of a § 1782 petition is *facilitation* of the arbitral process and *assistance* to that process—not obstruction of the process. This is consistent with Article 27 of the UNCITRAL Model Law, which provides "the arbitral tribunal or a party with the approval of the arbitral tribunal may request from a competent court of this State assistance in taking evidence." Thus far, U.S. courts have applied the statute in a consistent manner that has resulted in sensible decisions by lower courts, which genuinely aid the arbitral process and do not produce unnecessary delay, expense, or interference with the arbitrators' control over disclosure and evidence-taking.
>
> BSGR's § 1782 petition represents an unprecedented departure from all prior usage of 28 U.S.C. § 1782. I have never heard of another instance in which a party to an arbitration successfully sought relief under the statute as a means to remove arbitrators from a standing tribunal. Nor have I ever encountered an attempt— which is even more extraordinary—by a party to seek evidence of an arbitral tribunal's deliberations by virtue of the statute. This usage of the § 1782 cannot be proper by any stretch of the imagination.
>
> BSGR's application is not faithful to the foundational policies underlying 28 U.S.C. § 1782. In fact, it contradicts and makes a mockery of those principles. Rather than facilitate the LCIA arbitration, BSGR's application invokes § 1782 precisely for the opposite purpose, namely to dismantle arbitration. BSGR elected of its own accord to resolve its disputes with Vale through arbitration. It cannot now thwart the arbitral process through this application. Section 1782 exists to foster arbitration globally. The spirit of the law sits in harmony with the more general approach by U.S. courts to promote and favor arbitration as a dispute resolution mechanism. Yet BSGR's petition invites this Court to stand the statute on its head and use it as a conduit through which to kill an ongoing international arbitration.

Ex. Q ¶¶ 51-53 (footnote omitted).

Accordingly, even if this Court had authority to grant the Petition, the Court should decline in its discretion to do so.

## CONCLUSION

For the foregoing reasons, this Court should deny the Petition in full.

January 17, 2017

Respectfully Submitted,

/s/ Lindsay C. Harrison
Lindsay C. Harrison (No. 977407)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: 202-639-6000
lharrison@jenner.com

Lawrence S. Schaner*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Tel: 312-222-9350
lschaner@jenner.com

*Pro hac vice motion pending

Counsel for Respondents

32

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia via the CM/ECF system, which shall send service to all counsel of record.

/s/ Lindsay C. Harrison
Lindsay C. Harrison
