# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE APPLICATION PURSUANT TO 28 U.S.C. § 1782 | ) ) ) | |
| BSG RESOURCES LIMITED, | ) ) | |
| Petitioner, | ) ) | Misc. Case No. 16-2552 (BAH) |
| v. | ) ) | Chief Judge Beryl A. Howell |
| CHARLES N. BROWER and MICHAEL DALY, | ) ) ) | |
| Respondents | ) | |

## VALE S.A.'S OPPOSITION TO BSG RESOURCES LIMITED'S PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 COMPELLING DISCOVERY IN AID OF A FOREIGN JUDICIAL PROCEEDING

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 5

   I.  Background to the LCIA Arbitration ........................................................................ 5

        A.  The Parties to the LCIA Arbitration ........................................................... 5

        B.  BSGR Fraudulently Induces Vale to Enter Into The Joint Venture to
        Develop Simandou Blocks 1 and 2 .............................................................. 5

        C.  The Government of Guinea and Other Government Agencies Around the
        Globe Uncover BSGR's Bribery and Corruption ............................................ 7

   II.  BSGR Seeks to Frustrate and Delay the LCIA Arbitration ........................................ 9

        A. BSGR Twice Fails to Remove the Co-Arbitrators Through LCIA
        Challenges .................................................................................................. 11

        B.  BSGR Erects Additional Procedural Obstacles and Boycotts the Tribunal's
        Hearings ..................................................................................................... 15

        C.  BSGR Commences the U.K. High Court Action and Files the Petition,
        Making the Same Allegations Rejected in the First Challenge ...................... 16

ARGUMENT ...................................................................................................................... 18

   I.  The Decision to Grant or Deny a § 1782(a) Petition Is Committed to the Court's
     Sound Discretion ................................................................................................... 18

   II. Each *Intel* Factor Weighs Against Granting BSGR's Petition, Which the
     Circumstances Show Has Been Brought in Bad Faith, and the Court Should Exercise
     Its Discretion to Deny the Petition ......................................................................... 20

        A.  The Documents BSGR Seeks Here Are the Same Documents It Seeks
        from the Parties to the U.K. High Court Action ............................................ 21

        B.  The "Nature" and "Character" of the Proceedings Strongly Favor
        Rejecting BSGR's Application ..................................................................... 24

        C.  BSGR's Petition Is Designed to Circumvent the Proof-Gathering Limits in
        the U.K. High Court Action and the LCIA Arbitration ................................ 27

        D.  BSGR's Petition Is Unduly Burdensome and Intrusive ........................... 29

CONCLUSION.................................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*HT S.R.L. v. Velasco*,
   125 F. Supp. 3d 211 (D.D.C. 2015) ................................................................................ 24-25

*In re Caratube Int'l Oil Co.*,
   730 F. Supp. 2d 101 (D.D.C. 2010) .............................................................................. *passim*

*In re Digitechnic*,
   No. C07-414-JCC, 2007 WL 1367697 (W.D. Wash. May 8, 2007) ................................20, 29

*In re Ex Parte LG Elecs. Deutschland GmbH*,
   No. 12CV1197-LAB MDD, 2012 WL 1836283 (S.D. Cal. May 21, 2012)...........................22

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*,
   No. 15-MC-127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015)........................................20, 29

*In re IPC Do Nordeste, LTDA, For An Order Seeking Discovery Under 28 U.S.C. §1782*,
   No. 12-50624, 2012 WL 4448886 (E.D. Mich. Sept. 25, 2012)..............................................24

*In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*,
   No. 2:14-CV-00797-GMN, 2015 WL 3439103 (D. Nev. May 28, 2015)...............................22

*In re King.com Ltd.*,
   No. 16-mc-80070-JCS, 2016 WL 4364286 (N.D. Cal. Aug. 16, 2016) .................................19

*In re Leret*,
   51 F. Supp. 3d 66 (D.D.C. 2014) ................................................................................... 20-21

*In re Mare Shipping Inc.*,
   No. 13 Misc. 238, 2013 WL 5761104 (S.D.N.Y. Oct. 23, 2013) ...........................................22

*In re 28 U.S.C. § 1782*,
   473 F. App'x 2 (D.C. Cir. 2012) .................................................................................19, 20

*In re 28 U.S.C. § 1782 for Discovery from Slawomir Kaczor*,
   No. 14-mc-44, 2014 WL 4181618 (S.D. Ohio Aug. 21, 2014) .............................................19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)........................................................................................................ *passim*

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*,
    384 F. Supp. 2d 45 (D.D.C. 2005) ...........................................................................25

*Pinchuk v. Chemstar Prods. LLC*,
    No. 13-mc-306-RGA, 2014 WL 2990416 (D. Del. June 26, 2014) .......................................19

*Roeder v. Islamic Republic of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) ...............................................................................1

*Schmitz v. Bernstein Leibhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004)............................................................................. 21-22

**Statutes**

28 U.S.C. § 1782(a) ...................................................................................19

Intervenor[1] Vale S.A. ("Vale") respectfully submits this memorandum of points and authorities in opposition to the Petition of BSG Resources Limited ("BSGR" or "Petitioner") for an Order Pursuant to 28 U.S.C. § 1782 Compelling Discovery in Aid of a Foreign Judicial Proceeding (the "Petition"), ECF No. 7.[2]

## PRELIMINARY STATEMENT

In April 2014, Vale instituted an arbitration against BSGR before the London Court of International Arbitration (the "LCIA Arbitration") seeking to recover more than $1 billion in damages Vale has suffered due to BSGR's bribery, corruption, and fraud.  BSGR has spent the last nearly three years seeking to delay the LCIA Arbitration as long as possible.  Its Petition – filed at the eleventh hour, as the merits hearing in the Arbitration is due to begin on February 20, 2017 – is the latest of many delay tactics BSGR has employed.  Abusive and meritless applications of this kind present one of the key reasons why the Court is vested with "considerable discretion" to deny relief under § 1782, and the Court should exercise that discretion to deny the Petition here.

Vale's claims in the LCIA Arbitration arise from BSGR's fraud in inducing Vale in 2010, through false statements, representations, and warranties, to invest more than $1 billion in a joint

---

[1] Vale filed its Motion to Intervene on December 30, 2016, ECF No. 14, "for the purpose of opposing" the Petition on the same schedule set by the Court for Respondents' opposition.  The Court granted Vale's Motion to Intervene on January 10, 2017, and set Respondents' response date as January 17, 2017.  ECF No. 21.  In a letter dated January 12, 2017, BSGR nonetheless asserted that – despite the grant of its intervention motion – Vale must also move separately for permission to oppose BSGR's § 1782 application.  This assertion is meritless:  as an intervenor, Vale "participates on an equal footing with the original parties to a suit."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003).

[2] Vale joins in the Respondents' opposition to the Petition, and submits these additional grounds for denying the Petition.  As a result, this submission does not address Respondents' primary argument – with which Vale wholeheartedly agrees – that compelled disclosure of arbitrators' deliberations and communications is contrary to the law and strong public policy and would severely undermine international arbitration.

venture with BSGR to develop mining rights in Guinea that, unknown to Vale at the time, BSGR had obtained by bribing Guinean government officials.  In April 2014, following its investigation into BSGR's corrupt activities, the Government of Guinea revoked the mining rights then held by the Vale/BSGR joint venture, causing Vale to lose its investment.  Vale initiated the LCIA Arbitration to recover its losses.

BSGR has gone to extraordinary lengths to avoid a hearing on the merits of Vale's claims.  It has unsuccessfully sought multiple stays of the LCIA Arbitration; has drawn out the document disclosure process by continually violating the LCIA arbitral tribunal's (the "Tribunal") orders; has brought repeated challenges to members of the Tribunal before its governing body, the LCIA Court; has refused to participate in Tribunal hearings; and most recently, has commenced a civil proceeding under s. 24 of the United Kingdom's Arbitration Act 1996 in the High Court of England and Wales (the "U.K. High Court Action") in an attempt to resurrect a challenge against two members of the Tribunal, ███████████████████ ████ (the "Co-Arbitrators"),[3] on the same grounds the LCIA Court previously rejected. (Meanwhile, one of BSGR's agents and a witness in the LCIA Arbitration, Frédéric Cilins, was convicted of obstruction of justice in the United States for his role in trying to cover up BSGR's bribery; two other witnesses, BSGR's principal, Beny Steinmetz, and its president, Asher Avidan, were recently arrested in Israel for their part in the scheme; and a fourth BSGR witness, former Guinean Minister of Mines Mahmoud Thiam, was arrested last month by the FBI for laundering proceeds of another bribe he is charged with receiving.)  BSGR's obstructive behavior succeeded in postponing the merits hearing in the LCIA Arbitration originally

---

[3] ████████████████████████████████████████████████████████████

scheduled to commence on August 29, 2016, but the rescheduled merits hearing is set to begin on February 20, 2017.

It is in this context that BSGR filed its § 1782 Petition on December 19, 2016 seeking discovery from the former Tribunal Chair, Judge Charles Brower, and the Tribunal Secretary, Michael Daly (the "Respondents").  The Petition seeks discovery in purported aid of the U.K. High Court Action, in which Vale is the "First Defendant."  The sole issue in the U.K. High Court Action is whether, as BSGR alleges, the Co-Arbitrators, both of whom are also defendants in that action, "have refused and/or failed properly to conduct the proceedings by delegating their roles to . . . the Tribunal secretary."  (BSGR's Mem. of Law at 5, ECF No. 7-1.)  The LCIA Court has already considered and rejected this allegation.  The High Court will shortly determine the question itself, with a hearing on BSGR's claim scheduled for February 3, 2017.  In advance of that, the High Court will also hear BSGR's parallel application for disclosure on January 20, 2017, in which BSGR seeks an order compelling production of essentially the same information sought here under § 1782 (the "U.K. Disclosure Application").

BSGR's actions leave no doubt as to its intention in bringing the § 1782 Petition.  BSGR filed the Petition nearly *nine* months after it first sought the same documents from Judge Brower and Mr. Daly that it seeks now, more than *four months* after the LCIA Court rejected the challenge BSGR reasserts in the U.K. High Court Action, and *two months* after BSGR commenced the U.K. High Court Action, where it has requested disclosure of largely the same documents.  BSGR's delay is a transparent attempt to continue its strategy of undermining the LCIA Arbitration schedule in the hope that it can once again avoid a hearing on the merits of Vale's claims. ███████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████        BSGR has also announced to the High Court that it will seek to postpone

resolution of the U.K. High Court Action if this Court's decision on the Petition or any discovery

the Court allows under § 1782 remains pending as of the February 3 High Court hearing date,

and has likewise announced to *this* Court that if discovery – should the Court grant any –

remains pending prior to the U.K. High Court Action hearing, it "will seek an order from the

High Court which would enable it to renew its claim following discovery."  (BSGR's Opp. to

Mot. for Extension of Time at 2, ECF No. 19.)

       In light of this behavior, the Court should exercise its discretion to deny the Petition.

*First*, BSGR's undue delay and ulterior motive in bringing the Petition are alone sufficient

grounds to deny it.  Having intentionally put off seeking this relief for many months, BSGR

should not be permitted to abuse § 1782 as yet another tool for delaying a merits hearing in the

LCIA Arbitration.  *Second*, even putting BSGR's delay and motives aside, the Court should deny

the Petition as unnecessary.  Any documents held by the Respondents that could be relevant to

BSGR's claims against the Co-Arbitrators in the U.K. High Court Action are also in the hands of

the Co-Arbitrators, who are defendants in that proceeding, and any documents *not* held by the

Co-Arbitrators are irrelevant to the U.K. High Court Action, where BSGR's claims relate solely

to the Co-Arbitrators' alleged conduct.  *Third*, in light of the impending High Court ruling on the

U.K. Disclosure Application seeking essentially the same information, the Petition serves no

purpose except to hedge against an adverse ruling by the High Court – *i.e.*, to circumvent the

High Court's proof-gathering limitations, an improper abuse of §1782.  *Finally*, in addition to

needlessly burdening the Respondents with a fishing expedition into confidential Tribunal

deliberations and improperly invading those internal discussions, granting the Petition will also

prejudice Vale with the threat of still further delay and expense in pursuing its long pending

claims against BSGR.

## STATEMENT OF FACTS

I. **Background to the LCIA Arbitration**

A. **The Parties to the LCIA Arbitration**

Vale is a Brazilian mining company and the world's largest producer of iron ore, whose

shares are listed on stock exchanges around the world, including the New York Stock Exchange.

BSGR stands for "Beny Steinmetz Group Resources." Beny Steinmetz is an Israeli

businessman with diamond mining and other mineral resource interests that are held through a

complex web of offshore entities and corporate structures. While BSGR's corporate structure is

notoriously tangled and opaque, as relevant here, BSGR (which constitutes the mining arm of

Steinmetz's empire) is a Guernsey company wholly owned by Nysco Management Corporation

Limited, a holding company incorporated in the British Virgin Islands, which is in turn wholly

owned by the Balda Foundation, an irrevocable trust established in the Principality of

Liechtenstein whose sole beneficiaries are Steinmetz and his family. Steinmetz – BSGR's

namesake, principal, and chief beneficiary – holds himself out as a mere "advisor" to the

company, but in reality operates as BSGR's *de facto* CEO.

B. **BSGR Fraudulently Induces Vale to Enter Into The Joint Venture to Develop
Simandou Blocks 1 and 2**

The LCIA Arbitration arises out of a joint venture entered into between Vale and BSGR

in April 2010 to develop the area known as Simandou Blocks 1 and 2 in Guinea, believed to be

part of the largest untapped deposit of iron ore in the world. BSGR had obtained rights to

Simandou Blocks 1 and 2 in December 2008 from the Government of Guinea, then under the

control of President Lansana Conté, who died two weeks after awarding the rights to BSGR.

Less than a year later, Mahmoud Thiam, a BSGR witness in the LCIA arbitration who served as Minister of Mines under the military regime that took power following President Conté's death, confirmed BSGR's newly-acquired rights to Simandou Blocks 1 and 2.

After receiving the rights to Simandou Blocks 1 and 2, BSGR sought out various potential partners to develop them, including Vale.  In March 2010, BSGR and Vale began negotiating a joint venture.  During the negotiations, Vale took steps to protect itself in dealing with a company that was not familiar to it in a part of the world known for corruption.  Vale conducted extensive due diligence, designed not only to identify any direct evidence of bribery in BSGR's obtaining the mining rights to Simandou, but also to uncover any information that might point to the possible existence of bribery and corruption, such as the use of third-party "fixers" or the payment of exorbitant commissions to consultants.  BSGR repeatedly represented and warranted to Vale that it had lawfully obtained its mining rights in Guinea, that it had not used any undisclosed consultants or intermediaries, and that it had disclosed all material documents and information.

On April 30, 2010, Vale and BSGR executed the Joint Venture Framework Agreement and Shareholders Agreement (together, the "JV Documents"), pursuant to which Vale became the 51% owner of the resulting joint venture, called VBG Guinea, which held the rights to Simandou Blocks 1 and 2 previously acquired by BSGR.  BSGR retained a 49% minority stake. Vale paid US$500 million to BSGR at the time of signing, and, as required by the JV Documents, funded the development of mining operations, subsequently investing approximately US$750 million more in the joint venture.

### C. The Government of Guinea and Other Government Agencies Around the Globe Uncover BSGR's Bribery and Corruption

Between 2012 and 2014, the newly-elected Government of Guinea conducted a review of mining rights awarded under previous administrations, including a review of BSGR's rights in Simandou.  On October 30, 2012, the governmental body entrusted with this review – the Technical Committee for the Review of Mining Titles and Agreements of the Government of the Republic of Guinea (the "Technical Committee") – informed VBG Guinea that it was investigating credible allegations that BSGR had acquired the rights to Simandou Blocks 1 and 2 in 2008 through bribery of Guinean government officials, including Mamadie Touré, the wife of the late President Lansana Conté, both directly and through intermediaries such as BSGR's agent Frédéric Cilins.  (Ex. A, Letter from Technical Committee to VBG Guinea (Oct. 30, 2012) at 4-6 (with translation).)[4]  Vale cooperated with the Technical Committee's investigation, and urged BSGR to do the same; BSGR – which was the only party in a position to provide the information the Technical Committee sought, since it predated Vale's involvement – refused to cooperate and refused to attend the hearing held by the Technical Committee on December 16, 2013.

While the Technical Committee investigation was underway, Cilins was arrested in the United States by the FBI in the act of attempting to bribe Mrs. Touré to induce her to destroy documentary evidence of BSGR's corruption.  Cilins pleaded guilty to obstruction of justice, admitting that he agreed to pay Mrs. Touré to induce her to destroy documents "related to allegations concerning the payment of bribes to obtain mining concessions in the Simandou region of Guinea."  (Ex. B, Superseding Information at 1-2, *United States v. Cilins*, No. 13 Cr. 315(WHP) (S.D.N.Y. Mar. 10, 2014), ECF No. 60; *see also* Ex. C, Plea Hearing Tr. 19:1-4,

---

[4] All citations to Exhibits ("Ex.") are to the Exhibits to the Declaration of Jonathan I. Blackman dated January 17, 2017.

*United States v. Cilins*, No. 13 Cr. 315(WHP) (S.D.N.Y. Mar. 10, 2014), ECF No. 62.) ███

███████████████████████████████████████████████████████████████

████████████████████████████████████████████

Following its investigation, the Technical Committee recommended on March 28, 2014 that the mining rights be withdrawn from VBG Guinea because BSGR had obtained them through corrupt practices and had engaged in attempts to destroy evidence of its corrupt practices (at the same time finding no wrongdoing on the part of Vale). The Government of Guinea subsequently revoked the mining rights held by VBG Guinea in April 2014, rendering worthless Vale's majority stake in the joint venture. Vale promptly commenced the LCIA Arbitration.

Since then, the evidence against BSGR has continued to mount as governments around the world, including in the United States, Switzerland, and Israel, investigate BSGR's wrongdoing in Guinea. In the last month alone, three of BSGR's key witnesses in the LCIA Arbitration, including Steinmetz himself, have been arrested in connection with investigations of corruption in Guinea.

- On December 19, 2016, Steinmetz was arrested by the Israeli authorities following an "extensive investigation" by the Israeli National Fraud Investigation Unit into BSGR's bribery and corruption in Guinea. (Ex. E, Mot. for Release on Bail, *State of Israel v. Steinmetz*, Crim. File 323129-2015 (Magis. Ct. in Rishon Lezion, Dec. 19, 2016) (Isr.) at 1.) The next day, the Israeli authorities arrested BSGR's president, Asher Avidan, on identical charges. (Ex. F, Mot. for Release on Bail, *State of Israel v. Steinmetz*, Crim. File 323129-2015 (Magis. Ct. in Rishon Lezion, Dec. 20, 2016) (Isr.) at 1.)

- According to the Israeli investigation, BSGR, under Steinmetz's control, paid "tens of millions of dollars" in bribes to President Conté, his wife Mrs. Touré, and others, "in exchange for the concession to mine iron in Guinea, which has yielded profits of hundreds of millions of dollars." (Ex. E, Mot. for Release on Bail at 1.)[5] Steinmetz's bail was set at NIS100 million, the equivalent of US$26 million,

---

[5] The Israeli authorities placed both Steinmetz and Avidan under house arrest for two weeks; prohibited them from contacting anyone involved in the case for 180 days; forbade them from entering their offices for a month; and ordered them to remain in Israel for 180 days and to

and the Israeli authorities placed a lien on two of his houses worth more than US$50 million.  (Ex. K, Jasmin Gueta, *Israel Police Place Lien on Luxury Homes Owned by Billionaire Beny Steinmetz*, Haaretz (Dec. 26, 2016, 3:50 PM), http://www.haaretz.com/israel-news/business/1.761467.)

- On December 13, 2016, former Minister of Mines Thiam – who Vale alleges assisted BSGR in perpetrating its bribery scheme in Guinea and concealing it from Vale – was arrested by the FBI and charged in the Southern District of New York with laundering proceeds from US$8.5 million in bribes that he allegedly received from a Chinese conglomerate in 2009 and 2010 during his tenure as Minister of Mines of Guinea.  (Ex. L, Crim. Compl., *United States. v. Thiam*, No. 16-MJ-7960 (S.D.N.Y. Dec. 12, 2016), ECF No. 1.)[6]

Upon information and belief, investigations into BSGR's bribery scheme in Guinea remain

ongoing in several jurisdictions.

## II.   BSGR Seeks to Frustrate and Delay the LCIA Arbitration

Vale filed its Request for Arbitration in the LCIA on April 28, 2014, ███████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

---

surrender their passports for this period.  (Ex. G, Hr'g Tr., *State of Israel v. Steinmetz*, Crim. File 323129-2015 (Magis. Ct. in Rishon Lezion, Dec. 19, 2016) (Isr.) at 2; Ex. H, Hr'g Tr., *State of Israel v. Steinmetz*, Crim. File 323129-2015 (Magis. Ct. in Rishon Lezion, Dec. 20, 2016) (Isr.) at 2.)  Following his release from house arrest on January 4, 2017, and contrary to BSGR's representations to the media (Ex. I, *Billionaire Beny Steinmetz Released from Israel House Arrest*, Reuters (Jan. 4, 2017, 11:56 AM), http://www.reuters.com/article/us-israel-corruption-steinmetz-idUSKBN14O1QT), Steinmetz remains subject to the other conditions of his bail while the investigation continues.  (Ex. J, *Rio Tinto Rival Beny Steinmetz Released from House Arrest in Israel*, Australian Financial Review (Jan. 5, 2017), http://www.afr.com/business/mining/rio-tinto-rival-beny-steinmetz-released-from-house-arrest-in-israel-20170104-gtm5u8.)

[6] Thiam is being held without bail on the grounds that he is a flight risk and was not forthcoming with Pretrial Services regarding his assets.  (Ex. M, Bail Hr'g Tr. 12:17-13:13, *United States v. Thiam*, No. 16-MJ-7960 (S.D.N.Y. Dec. 13, 2016).)

[7]  The JV Documents provide, in relevant part, that "[a]ny dispute, controversy or claim arising between any of the Parties to this Agreement out of or in connection with this Agreement, including any question regarding the existence, validity, or termination of this Agreement, shall be referred to and finally resolved by arbitration under the Rules of Arbitration of the London Court of International Arbitration (the 'LCIA Rules')."  (*See* Libson Decl. ¶ 7, ECF No. 7-11.) Further,  "all disputes arising out of or in connection with this Agreement . . . shall be exclusively governed by and determined only in accordance with English law."  (*See id*.)

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████

      ██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

     In response to the LCIA Arbitration, BSGR's primary strategy has been to try to delay and frustrate the proceedings as long as possible.  Without attempting to exhaustively catalogue BSGR's delay tactics, they have included the following:

- Three separate stay applications, all of which the Tribunal denied;[8]

- Protracted delays in document production ████████████████████████████
  ████████████████████████████████████████████████████
  ████████████████████████████████████████████

---

[8] ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████ Ironically, BSGR recently sought to derail its own ICSID arbitration too, by challenging all the members of *that* Tribunal.  The Chairman of the ICSID Administrative Council denied that challenge on December 28, 2016.  (Ex. P, ICSID Challenge Decision.) ████████████████████████████

[9] ████████████████████████████████████████████████
████████████████████████████████████████████████████

- Two applications to the LCIA Court to remove members of the Tribunal, both of which were denied as to the Co-Arbitrators;

-  and

- Most recently, initiating the U.K. High Court Action to renew its failed challenge to the Co-Arbitrators, and the present Petition, all in a further effort to forestall the merits hearing in the LCIA Arbitration due to commence February 20, 2017.[10]

To date, BSGR's tactics have succeeded in delaying the disclosure phase of the LCIA Arbitration by more than a year and, more significantly, impeding the merits hearing, which was scheduled to begin on August 29, 2016, for nearly six months until February 20, 2017. BSGR's goal in both the U.K. High Court Action and its Petition here is more of the same: to undermine the rescheduled merits hearing in the LCIA Arbitration and postpone it from actually being held as long as possible. BSGR's efforts to obstruct the LCIA Arbitration that are most relevant to the Court's exercise of its discretion under § 1782 are discussed in further detail below.

### A. BSGR Twice Fails to Remove the Co-Arbitrators Through LCIA Challenges

On May 5, 2016 – two years into the LCIA Arbitration and three months before the scheduled merits hearing – BSGR filed a challenge (the "First Challenge") against all three members of the Tribunal with the LCIA Court, which appointed a panel to adjudicate the claim



10

(the "LCIA Division").  The First Challenge raised five grounds, three of which applied only to the then-Chair, Judge Brower, one of which applied to the entire Tribunal, and one of which applied only to the Co-Arbitrators. ████████████████████████████

████████████████████████████████████████

████████████████████████████

█   ████████████████████████████████████
████████████████████████████████

█   ████████████████████████████████
████████████████

████████████████████████████████████

████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████

████████████████████████████████████

█████████████████████████████████

████████████████████████████████████

██████████████████████████████

██████████████████████████████

████████████████████████████████████

████████████████████████

After receiving briefing and holding a hearing, the LCIA Division issued its decision on August 4, 2016, rejecting four of BSGR's five grounds, including both grounds applicable to the Co-Arbitrators. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████ However, the LCIA Division also concluded – contrary to BSGR's misleading recitation of facts in its Petition – that the former Chair was not *in fact* biased and that the decisions of which BSGR complained were not the product of bias.[11]

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[11] ████████████████████████████

████████████████████████████████████ Thus, the LCIA Division did not, as BSGR wrongly asserts (BSGR's Mem. Of Law at 1, ECF No. 7-1), conclude that Judge Brower was *actually* biased.



██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████

**B. BSGR Erects Additional Procedural Obstacles and Boycotts the Tribunal's Hearings**

BSGR has also taken other steps to avoid a merits hearing on Vale's claims. ████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████

   ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████



Unless BSGR can forestall the merits hearing through some other maneuver, the merits of the LCIA Arbitration brought by Vale nearly three years ago will therefore finally be heard next month.

### C. BSGR Commences the U.K. High Court Action and Files the Petition, Making the Same Allegations Rejected in the First Challenge

The present § 1782 Petition is just such a maneuver.  On October 7, 2016, BSGR informed the Co-Arbitrators and Vale that it intended to file a claim with the U.K. High Court to remove the Co-Arbitrators under section 24(1) of the Arbitration Act 1996.  BSGR's claim form, which it waited two more weeks to serve on October 21, 2016, requested that the English court remove the Co-Arbitrators based on their alleged improper delegation to Mr. Daly with regard to the same three decisions rendered by the Tribunal that were the focus of the First Challenge. (Sealed Claim Form ¶ 2(a), ECF No. 7-12).  In other words, the U.K. High Court Action raises the same claims already rejected two months earlier by the LCIA Court in the August 4, 2016

---

[14] Further showing its bad faith motive to delay, BSGR then filed its challenge to the entire ICSID Tribunal in an attempt to derail *that* hearing.

First Challenge Decision.





 However, the Petition here was not filed until more than four weeks later.[16]

## ARGUMENT

**I.**     **The Decision to Grant or Deny a § 1782(a) Petition Is Committed to the Court's Sound Discretion**

Section 1782(a) "authorizes, but does not require," a federal district court to exercise its

discretion to order discovery "for use in a proceeding in a foreign or international tribunal."

---

[16] 

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004); 28 U.S.C. § 1782(a).[17]

Even where the petitioner meets the statutory requirements for relief, the Court has "considerable

discretion" to deny the petition, and need not grant discovery "simply because it ha[s] the

authority to do so."   *In re 28 U.S.C. § 1782*, 473 F. App'x 2, 3-4 (D.C. Cir. 2012) (quoting *Intel*,

542 U.S. at 264).

The Supreme Court has "suggest[ed] guides for the exercise of district-court discretion"

by identifying several "factors that bear consideration in ruling on a § 1782(a) request."  *Intel*,

542 U.S. at 264-65 & n.15.  These non-exhaustive[18] factors include:  (1) whether "the person

from whom discovery is sought is a participant in the foreign proceeding" and whether "their

evidence may be unobtainable absent § 1782(a) aid," (2) "the nature of the foreign tribunal, the

character of the proceedings underway abroad, and the receptivity of the foreign . . . court . . . to

U.S. federal-court judicial assistance," (3) "whether the 1782(a) request conceals an attempt to

circumvent foreign proof-gathering restrictions or other policies of a foreign country or the

United States," and (4) whether the request is "unduly intrusive or burdensome."  *Id.* at 264-5.

"The discretionary guidelines in *Intel* do not command that each factor be weighed equally, nor

---

[17] A district court *may* order discovery if three statutory requirements are met:  "(1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  *In re Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 104 (D.D.C. 2010).

[18] *See, e.g.*, *In re King.com Ltd.*, No. 16-mc-80070-JCS, 2016 WL 4364286, at 7* (N.D. Cal. Aug. 16, 2016) (characterizing the *Intel* factors as "non-exhaustive"); *In re 28 U.S.C. § 1782 for Discovery from Slawomir Kaczor*, No. 14-mc-44, 2014 WL 4181618 (S.D. Ohio Aug. 21, 2014) (same); *Pinchuk v. Chemstar Prods. LLC*, No. 13-mc-306-RGA, 2014 WL 2990416, at *3 (D. Del. June 26, 2014) (same).

do they dictate whether any particular factor should take precedent." *In re Leret*, 51 F. Supp. 3d 66, 71 (D.D.C. 2014).[19]

In applying the *Intel* factors, courts have found that the timing of a petition, and in particular any undue delay in bringing it, often betokens bad faith or gamesmanship, and therefore weighs heavily in favor of denying the petition. *See, e.g.*, *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, No. 15-MC-127, 2015 WL 4040420, at *7 (S.D.N.Y. June 29, 2015) (denying § 1782 petition based on "highly suspect" timing and procedural history); *Caratube*, 730 F. Supp. 2d at 106-07 (petitioner's tardiness in filing § 1782 petition, and its failure to defend its delay given the late stage of the arbitral proceedings, supported denial of the petition); *In re Digitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *5 (W.D. Wash. May 8, 2007) (denying "eleventh hour" § 1782 petition as an attempt to circumvent French discovery process and as unduly burdensome).

In short, the Court has considerable discretion to weigh the factors it finds to be most relevant under the circumstances of a particular case.

## II.   Each *Intel* Factor Weighs Against Granting BSGR's Petition, Which the Circumstances Show Has Been Brought in Bad Faith, and the Court Should Exercise Its Discretion to Deny the Petition

The Court should exercise its discretion to deny BSGR's Petition. Besides being an improper and unprecedented attempt to misuse § 1782 to invade the internal processes of an arbitral tribunal, as addressed by the Respondents, the Court should reject the Petition because it has been brought in a bad faith attempt to delay or undermine the LCIA Arbitration and to

---

[19] *See also In re 28 U.S.C. § 1782*, 473 F. App'x 2, 4 (D.C. Cir. 2012) (affirming the district court's denial of a § 1782 petition that "chose to weigh most heavily" the character of the proceedings and the burdensomeness of the request); *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, No. 15-MC-127, 2015 WL 4040420, at *6-8 (denying a § 1782 petition based on the circumvention factor and petitioner's abuse of § 1782(a) to conduct a "fishing expedition").

prejudice Vale.  As detailed above, BSGR's conduct from the outset of the LCIA Arbitration – the proceeding from which both the U.K. High Court Action and the Petition spring – has been calculated to delay the merits hearing, which is now set to begin on February 20, 2017, for as long as possible.  The Petition – itself filed after undue delay – is merely the latest in a long line of delay tactics deployed by BSGR, and should be rejected on that basis.

For this reason and others, as set out below, each of the *Intel* factors weighs against granting BSGR's Petition.

### A.  The Documents BSGR Seeks Here Are Essentially the Same Documents It Seeks from the Parties to the U.K. High Court Action

While the Respondents here, Judge Brower and Mr. Daly, are not parties to the U.K. High Court Action, the first *Intel* factor supports denying the Petition because the documents BSGR seeks are obtainable in the U.K. High Court Action through the Co-Arbitrators, who *are* parties and who necessarily possess any documents sought by BSGR here that could be relevant to BSGR's claims there.

The first *Intel* factor recognizes that a § 1782 request may be justified where a non-party's "evidence *may be unobtainable* absent § 1782(a) aid."  *Intel*, 542 U.S. at 264 (emphasis added).  Where, as here, the same evidence *is* obtainable from parties to the foreign proceeding, there is no need to grant § 1782 relief.  In *Schmitz v. Bernstein Leibhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004), for example, the Second Circuit held that although the Cravath law firm, the respondent to a § 1782 petition, was not a party to the foreign proceeding, the petitioner "for all intents and purposes" sought discovery from Cravath's client, its opponent in the foreign proceeding, because documents it sought were in both Cravath's and the client's possession.  *Schmitz*, 376 F.3d at 85.  Thus, the first *Intel* factor weighed against granting the petition notwithstanding that the respondents themselves were not parties to the foreign proceeding,

21

because "petitioner's need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *Id.* (quoting *Intel*, 542 U.S. at 264).[20]

Likewise, here, BSGR seeks discovery of essentially the same documents from the Respondents that it is simultaneously seeking to obtain from the Co-Arbitrators in the U.K. High Court Action ██████████████████████████████████████████████████████████████████████ ███████████████. BSGR's U.K. Disclosure Application seeks an order that would require the Co-Arbitrators to produce the same documents that BSGR seeks here: "instructions, requests queries or comments" from the Tribunal "[i]n relation to each of the Decisions or the drafting thereof," as well as any responses from the Tribunal Secretary.[21] Thus, there is no need for the Court to grant BSGR's largely duplicative Petition.

---

[20] *See also In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *6-7 (D. Nev. May 28, 2015) (stating that "the key issue is whether the material is obtainable through the foreign proceeding," not whether the person is a party to the foreign proceeding, and that the first *Intel* factor "militates squarely against allowing the discovery sought" notwithstanding that respondent was not a party to the foreign proceeding); *In re Mare Shipping Inc.*, No. 13 Misc. 238, 2013 WL 5761104, at *4-5 (S.D.N.Y. Oct. 23, 2013) (first *Intel* factor favors respondent even though respondent was not a party to the foreign proceeding); *In re Ex Parte LG Elecs. Deutschland GmbH*, No. 12CV1197-LAB MDD, 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012) (same).

[21] *Compare* ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████, *with* Subpoena for Production of Documents and Deposition, ECF No. 7-3 ("All Documents and Communications sent, received or created by [Judge Brower] which relate to the role and work of the Secretary in the LCIA Arbitration, including, but not limited to, tasks delegated to the Secretary and instructions, requests, queries or comments from the LCIA Tribunal to the Secretary in relation to each of the Decisions or the drafting thereof, and responses to such instructions, requests, queries or comments."), *and* Subpoena for Production of Documents and Deposition, ECF No. 7-4 ("All Documents and Communications sent, received or created by [the Secretary] which relate to your role and work as secretary in the LCIA Arbitration, including, but not limited to, tasks delegated to [the Secretary] and instructions, requests, queries or comments from the LCIA

BSGR speculates that the Respondents may possess some documents not available from the Co-Arbitrators in the U.K. High Court Action, but any such documents would by definition be irrelevant BSGR's claim there.  According to BSGR, Respondents Judge Brower and Mr. Daly "'very often' emailed one another without copying the other members of the Tribunal." (BSGR's Opp. to Mot. for Extension of Time ¶ 14, ECF No. 19.)  This may be so, but any such communications between Judge Brower and Mr. Daly have no bearing on the outcome of the U.K. High Court Action, which concerns BSGR's allegation that "*the Co-Arbitrators*" – not Judge Brower, who was removed for a separate and unrelated reason – "have refused and/or failed properly to conduct the proceedings by delegating their roles to . . . the Tribunal secretary."  (BSGR's Mem. of Law at 5, ECF No. 7-1.)  The only documents potentially relevant to the U.K. High Court Action would be those showing the *Co-Arbitrators'* interactions with the Tribunal Secretary, and with Judge Brower regarding the work of the Tribunal Secretary and/or the Tribunal decisions at issue, which are in their own possession.  Documents in the hands of the Respondents that the Co-Arbitrators do not also possess, such as any communications between the Respondents on which the Co-Arbitrators were not copied, could not bear on the Co-Arbitrators' alleged improper delegation of *their own* responsibilities to Mr. Daly, and therefore could have no relevance to BSGR's claim in the U.K. High Court Action.[22]  It is only what the Co-Arbitrators said, did, and/or were told that is relevant to that Action.

Thus, any potentially relevant documents that BSGR seeks through its Petition are equally – if not exclusively – in the possession of the parties to the U.K. High Court Action, and

---

Tribunal to [the Secretary] in relation to each of the Decisions or the drafting thereof, and responses to such instructions, requests, queries or comments.").

[22] The same goes for BSGR's extraordinary request to depose the former Chair and the present Secretary of the Tribunal:  the only interactions to which they could testify with any bearing on the U.K. High Court Action would necessarily be known to the Co-Arbitrators.

available to the High Court should it choose to grant BSGR's U.K. Disclosure Application in

that forum.  Under these circumstances, the Petition is simply a device to cause further delay

and, as discussed further below, to act as an improper "hedge" against the possibility that the

High Court, located at the seat of the parties' chosen arbitral forum and for whose ostensible

benefit this discovery is sought, will deny BSGR's U.K. Disclosure Application.  This is an

obviously improper use of § 1782.[23]

### B. The "Nature" and "Character" of the Proceedings Strongly Favor Rejecting BSGR's Application

The second *Intel* factor – the "nature of the foreign tribunal" and "character of the

proceedings underway abroad," *Intel*, 542 U.S. at 264 – also favors denying the Petition.  The

"nature" of the U.K. High Court Action is clear:  BSGR seeks, at the eleventh hour before the

long-awaited merits hearing in the LCIA Arbitration, and after its arguments have been

repeatedly rejected in its bargained-for forum, the LCIA Court, to delay the LCIA Arbitration by

any means possible.

BSGR's delay and bad faith in bringing the Petition weigh heavily in the analysis of this

factor.  Contrary to BSGR's argument, the second *Intel* factor is not limited to considering

whether the foreign tribunal would "reject" the evidence sought.  (BSGR's Mem. of Law at 5,

ECF No. 7-1.)  Among other things, courts addressing the second factor consider the stage of the

foreign proceeding relative to the date of the petition and whether granting § 1782 relief would

be appropriate at that stage given the overall nature and course of the proceeding.  *See, e.g.*, *HT*

---

[23] BSGR's improper use of this forum while simultaneously seeking the same documents in the U.K. High Court Action also militates against § 1782 discovery under the fourth *Intel* factor.  *See In re IPC Do Nordeste, LTDA, For An Order Seeking Discovery Under 28 U.S.C. §1782*, No. 12-50624, 2012 WL 4448886, at *8-9 (E.D. Mich. Sept. 25, 2012) (where petitioner sought the same evidence in Brazilian action and by means of § 1782 petition in U.S. court, the § 1782 petition was "unreasonably cumulative or duplicative" and thus "unduly burdensome and intrusive").

*S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 223-24 (D.D.C. 2015) ("To determine whether the character of the foreign proceeding favors permitting discovery, courts analyze how far along the foreign suit is in the discovery process."); *Caratube*, 730 F. Supp. 2d at 106 (finding the second factor favors denying discovery based on the timing of the filing of the § 1782 petition relative to the arbitral tribunal's procedural schedule); *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005) (considering the timing of the § 1782 petition where the foreign litigation may not have reached "the stage in which discovery would be appropriate"). Moreover, as this Court has already recognized, the LCIA Arbitration underlying the U.K. High Court Action is also relevant to the second factor, such that "to rule on the instant petition, the Court will need information reflected in the documents filed in the underlying arbitration *and* High Court action."  (Mem. & Order at 5, ECF No. 21) (emphasis added).

The advanced stage of the LCIA Arbitration and the course of BSGR's actions in relation to its allegations against the Co-Arbitrators weigh heavily in favor of denying the Petition.  Vale filed the LCIA Arbitration nearly three years ago in April 2014, and the merits hearing, previously scheduled for August 29, 2016, is set to begin on February 20, 2017.  BSGR first began seeking the information its Petition targets nine months ago, yet continually delayed bringing the Petition until it believed it could serve to delay or undermine the LCIA Arbitration. Having manufactured these delays, BSGR now seeks to *further* postpone the merits hearing in the LCIA Arbitration on the basis of the U.K. High Court Action and its own tardy Petition. Under these circumstances, BSGR's Petition should be denied as untimely.

Judge Bates's decision in *Caratube* is on point.  There, the petitioner Caratube, which had commenced an arbitration against the Republic of Kazakhstan, filed a § 1782 petition seeking discovery for use in the arbitration less than a month before discovery was scheduled to

close and 10 months before the scheduled hearing. *Caratube*, 730 F. Supp. 2d at 103.  The court

rejected the petition, relying in part on Caratube's "delay in filing its petition" and holding that

"its tardiness in doing so . . . supports denying the petition." *Id.* at 106-07.  Notably, the court

found that the arbitration there was "late in the procedure," even though the scheduled hearing

was 10 months away. *See id.* at 107.  Here, the facts are even more egregious:  the merits

hearing is set to begin in a matter of weeks on February 20, 2017, not 10 months from now.[24]

       BSGR's delay in the U.K. High Court Action and in filing its Petition here likewise

weigh against granting the Petition. ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████ Having contemplated a High Court proceeding for

months, and having known all along that the Tribunal members would not provide disclosure on

the basis of confidentiality, BSGR had no excuse for its delay until shortly before Christmas

2016 in filing the Petition. *See Intel*, 542 U.S. at 259 (noting § 1782 relief may be sought when

foreign proceeding is in "reasonable contemplation").  At the very latest, BSGR should have

sued in the High Court and filed its Petition four months earlier, when the First Challenge was

rejected as to the Co-Arbitrators on August 4, 2016.  Instead, BSGR waited an additional two

months to initiate the U.K. High Court Action.  It then waited another two months to file this

Petition in purported aid of disclosure in the U.K. High Court Action, just as the merits hearing

looms in the LCIA Arbitration.  BSGR's choice to file this Petition so late in the course of its

---

[24] Any attempt by BSGR to distinguish this case on the basis that the relevant foreign proceeding here is the U.K. High Court Action, not the LCIA Arbitration, should fail:  not only has the Court already found that the LCIA Arbitration is relevant to determining the Petition, but the U.K. High Court Action is in substance a collateral attack on the LCIA Arbitration generally and on the decision of the LCIA Court that there is no basis to revoke the appointment of the Co-Arbitrators; it has no independent significance.

U.K. High Court Action, where a discovery hearing is scheduled in three days and a merits

hearing in just more than two weeks, again "supports denying the petition."   *Caratube*, 730 F.

Supp. 2d at 106-07.

#### C.  BSGR's Petition Is Designed to Circumvent the Proof-Gathering Limits in the U.K. High Court Action and the LCIA Arbitration

The Petition "conceals" – though not very well – "an attempt to circumvent foreign

proof-gathering restrictions or other polices of a foreign country or the United States," thus

running afoul of the third *Intel* factor.  *Intel*, 542 U.S. at 264-65.  The circumvention analysis

includes an assessment of the applicable discovery rules in the underlying foreign proceedings.

*See Caratube*, 730 F. Supp. 2d at 107 (analyzing the ICSID Rules and International Bar

Association Rules on the Taking of Evidence in International Commercial Arbitration).  Here,

██████████████████████████████████████████████████████

██████████████████████████████████ the High Court will shortly decide BSGR's U.K.

Disclosure Application regarding the same documents under English law.

BSGR argues that courts in the United Kingdom may generally be receptive to discovery

pursuant to § 1782 (BSGR's Mem. of Law at 11-12, ECF No. 7-1), but ignores the *sine qua non*

for the U.K. High Court Action:  the LCIA Arbitration initiated by Vale pursuant to its binding

arbitration agreement with BSGR, in which both parties agreed to be bound by the LCIA Rules

in a London-seated arbitration governed by English law.  In the U.K. High Court Action, BSGR

seeks to remove the Co-Arbitrators under s. 24(1) of the UK Arbitration Act, and has raised the

exact issues already litigated – and decided against BSGR – in the First Challenge Decision.

Thus, the foreign forum here is tied to the "parties' bargained-for expectations concerning the

arbitration process."  *Caratube*, 730 F. Supp. 2d at 106 (citing *Republic of Kazakhstan v.*

*Biederman Int'l*, 168 F.3d 880, 883 (5th Cir. 1999) ("Resort to § 1782 in the teeth of such

[arbitration] agreements suggests a party's attempt to manipulate United States court processes for a tactical advantage.")).  To the extent BSGR's choice of forum for the U.K. High Court Action was constrained by the seat of the underlying arbitration, this outcome was dictated by BSGR's decision regarding dispute resolution in the arbitration clause in its contracts with Vale, a choice it should not be allowed to circumvent because it suffered adverse rulings in its previous attempts to obtain the discovery the Petition seeks.

There is no doubt that BSGR is seeking to circumvent the rules to which it agreed.  The Petition represents BSGR's *fifth* bite at the apple over the course of eight months, during which it has repeatedly sought – and failed – to obtain discovery of the arbitrators' communications under the applicable rules. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Fourth*, BSGR filed its U.K. Disclosure Application, which is listed to be heard on January 20, 2017.  The Petition before the Court seeking identical relief under § 1782 (and at the eleventh hour) is BSGR's fifth attempt.[25]

---

[25] Vale of course does not contest the U.K. High Court's power to remove the Co-Arbitrators under s. 24 of the U.K. Arbitration Act, nor its power to order disclosure from the Co-Arbitrators, the issue to be decided by that Court on January 20, 2017.  The point here is that the § 1782 Petition in *this* Court clearly tries to circumvent both the U.K. Court that has jurisdiction

Under the circumstances, "the timing of Petitioner's various motions and petitions is highly suspect" and provides further grounds for denying the Petition. *In re Harbour Victoria*, 2015 WL 4040420, at \*7-8 (denying § 1782 petition based on the circumvention factor where § 1782 petition was filed after court indicated discovery request would not be granted); *see also Digitechnic*, 2007 WL 1367697, at \*5 (petitioner's "eleventh hour discovery application" under § 1782 was an attempt to circumvent French discovery rules, which would not have permitted such discovery). Similarly here, BSGR's delayed Petition is being employed in an attempt to obtain discovery it has been denied repeatedly on the merits in its contractually chosen forum.

### D.  BSGR's Petition Is Unduly Burdensome and Intrusive

Finally, while the burden of BSGR's proposed discovery is primarily a matter to be addressed by the Respondents in their opposition to the Petition, the foregoing discussion illustrates not only the irrelevant and unnecessary nature of the fishing expedition proposed in the Petition, but also that the burdens of BSGR's tactics do not fall on the Respondents alone. Vale, as the claimant in the underlying LCIA Arbitration that serves as the basis for both the U.K. High Court Action and BSGR's Petition, is substantially prejudiced by BSGR's continuing delay efforts, and would be substantially harmed were the Petition to be granted and BSGR provided with further means to attempt to delay and undermine the LCIA Arbitration's hearing on the merits.

### CONCLUSION

For the reasons set forth above, as well as those contained in Respondents' memorandum, the Court should deny BSGR's petition for an order pursuant to 28 U.S.C. § 1782 compelling discovery in aid of a foreign judicial proceeding.

over the s. 24 claim,

Dated:  January 17, 2016              Respectfully Submitted,


                                      /s/ Jonathan I. Blackman
                                      Jonathan I. Blackman
                                           *Admitted pro hac vice*
                                      Cleary Gottlieb Steen & Hamilton LLP
                                      One Liberty Plaza
                                      New York, New York 10006
                                      Telephone:  (212) 225-2490
                                      Facsimile:   (212) 225-3999
                                      Email:  jblackman@cgsh.com

                                      Matthew D. Slater (D.C. Bar # 386986)
                                      Cleary Gottlieb Steen & Hamilton LLP
                                      2000 Pennsylvania Avenue, N.W.
                                      Washington, D.C.  20006
                                      Telephone:  (202) 974-1930
                                      Facsimile:   (202) 974-1999
                                      Email:  mslater@cgsh.com

                                      *Counsel for Vale S.A.*